UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LOUVON WORTHEN BURROUGHS,
an individual,

    Plaintiff,

v.                                    Case No:   3:14-cv-33-J-32MCR

ANGELA COREY, in her official
capacity as the State Attorney for the
Fourth Judicial Circuit of Florida and
JOHN RUTHERFORD, in his official
capacity as the Sheriff of Duval
County, Florida,

    Defendants.

## **O R D E R**

Plaintiff Louvon Burroughs wants to be able to "willfully, repeatedly and intentionally communicate language . . . that would likely cause substantial emotional distress to the listener", but is afraid that she will violate Florida's stalking law if she does. (Doc. 15 at 8-9). Thus, she has filed a facial challenge to the constitutionality of Florida's stalking statute, Fla. Stat. § 784.048. Burroughs filed a motion for preliminary injunction seeking to enjoin Defendants, the State Attorney and the Sheriff, from enforcing the statute. (Doc. 7). She also filed an amended one-count complaint challenging the statute's facial constitutionality (Doc. 15), which Defendants moved to dismiss (Doc. 18, 19). The Court received Plaintiff's response (Doc. 21) and held oral argument on the pending motions, the record of which is incorporated by reference. (Doc. 23).

**I.     FACTS**

On March 11, 2012, Robert J. McLaurn III complained that Louvon Burroughs would not leave him alone and had placed a number of flyers concerning him on vehicles in a church parking lot. (Doc. 15 at 3). Upon investigation, the police officer on the scene discovered fifty-four flyers which stated

> (R.J.) Robert J. McLaurn III. This man was having sex with me Jan-2012 – March. He swindler me in to purchasing a black Trailor #BE2X68 with $9000.00 Nine thousand in lawn motor equipment and trail cost me $2000. He took and will not return. Please help me get my stuff back 566-5043. Reward $200. Lavern[1] 566-5043. Please Help!

(Doc. 15 at 3).

At oral argument, Defendants' counsel stated that Burroughs was also accused of showing up at McLaurn's home, waving a gun around, and making threatening statements. As a result of this investigation, on March 21, 2012, State Attorney Angela Corey charged Burroughs with one count of stalking in violation of Fla. Stat. § 784.048(2). (Doc. 15 at 4). Burroughs moved to dismiss the information, contending that the statute was unconstitutional, and filed an Amended Motion for a Statement of Particulars. (Doc. 15 at 5-6). The state court granted the motion for a statement of particulars and set the motion to dismiss for hearing. (Doc. 15 at 7). Corey then dismissed the case, declining to prosecute Burroughs. (Doc. 15 at 7). While Burroughs never received a statement of particulars, she alleges the charge against her was based, at least in part, on text messages she sent to McLaurn. (Doc. 15 at 6).

---

[1] While Plaintiff's name is Louvon, Plaintiff's counsel advised that she goes by Lavern.

Burroughs filed a complaint against Corey and Jacksonville Sheriff John Rutherford, asserting that § 784.048(2) infringes on her First Amendment right to free speech. (Doc. 1; Doc. 15 at 9-10). Burroughs alleges that she "has a current desire and intent to willfully, repeatedly, and intentionally communicate language . . . that would likely cause substantial emotional distress to the listener and/or listeners." (Doc. 15 at 8). This language consists of neither obscenity nor fighting words. (Doc. 15 at 8). However, the language could be deemed to serve no legitimate purpose and could be considered wrongful and without justification. (Doc. 15 at 9). Therefore, she is fearful that she will be arrested if she communicates the language in person or through electronic media. (Doc. 15 at 9).

Burroughs seeks a declaration that § 784.048(2) is facially unconstitutional and preliminary and permanent injunctions prohibiting its enforcement. (Doc. 15 at 11). Defendants assert that the complaint should be dismissed because § 784.048 is constitutional. (Doc. 18, 19). Defendants therefore also argue that Burroughs' motion for a preliminary injunction (Doc. 7) should be denied because her claim does not have a substantial likelihood of success. (Doc. 19 at 14).

## II. PRELIMINARY ISSUES

While Defendants focus primarily on the constitutional issue, they also argue that this case is not yet ripe (Doc. 19 at 13), that Rutherford is not the right party to be sued (Doc. 19 at 6-7), that Burroughs' claim should have been brought under 42 U.S.C. § 1983, rather than directly under the Constitution, (Doc. 19 at 4 n.3),[2] and

---

[2] Burroughs' Amended Complaint cites § 1983 as a jurisdictional basis for her

3

that Burroughs is not entitled to injunctive relief because there is an adequate remedy at law and no irreparable injury (Doc. 19 at 13). The Court has considered each of these arguments, but finds that none warrant dismissal.

### III.   THE CONSTITUTIONALITY OF FLORIDA'S STALKING STATUTE

#### A.   The Statute[3]

"A person who willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person commits the offense of stalking, a misdemeanor of the first degree . . . ." § 784.048(2). The same behavior, with the addition of a credible threat, constitutes aggravated stalking, a third degree felony. § 784.048(3). Stalking committed after an injunction or other court-imposed prohibition of conduct toward the subject person or their property is also aggravated stalking. § 784.048(4).

Harassment occurs when a person engages "in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." § 784.048(1)(a). A course of conduct is "a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose. The term does not include constitutionally protected activity such as picketing or other organized protests." § 784.048(1)(b). Cyberstalking requires a course of conduct such that a person has communicated or caused to be communicated "words, images, or language by or through the use of electronic mail or

---

claim. (Doc. 15 at 1).

[3] The first step in overbreadth analysis is to determine the reach of the statute. United States v. Williams, 553 U.S. 285, 293 (2008).

4

electronic communication, directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose." § 784.048(1)(d).[4]

## B. The Standard

Burroughs argues that § 784.048 is fatally overbroad and therefore facially invalid. (Doc. 15 at 10). As declaring a statute facially invalid is strong medicine, it should only be done sparingly, as a last resort. United States v. Dean, 635 F.3d 1200, 1204 (11th Cir. 2011). A plaintiff asserting that a statute is overbroad bears the burden of proving that, in relation to the statute's plainly legitimate sweep, a substantial number of the statute's applications are unconstitutional. Id. Thus, Burroughs must identify instances of protected speech that would be targeted by the statute and demonstrate that the protected speech is substantial relative to the statute's plainly legitimate coverage. See id. at 1206.

Burroughs says that the statute is subject to strict scrutiny. (Doc. 21 at 11-12). Strict scrutiny applies where the statute deals with a pure content-based restriction on speech. See United States v. Playboy Entm't Grp., Inc., 529 U.S. 803, 813 (2000). Strict scrutiny may apply to an as-applied challenge to § 784.048. See United States

---

[4] Burroughs asserts that the addition of the cyberstalking clause, with its emphasis on "words, images, or language," was a momentous change in the statute, rendering the statute violative of the First Amendment. However, any conduct prohibited under the cyberstalking clause was already covered by the harassment clause. The cyberstalking clause requires "a course of conduct . . . directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose." § 784.048(1)(d). In other words, it requires harassment. The only distinction is that the cyberstalking clause only covers the specific kind of harassment that is executed by the communication of "words, images, or language by or through the use of electronic mail or electronic communication". Id.

v. Cassidy, 814 F. Supp. 2d 574, 584-85 (D. Md. 2011) (applying strict scrutiny in an as-applied challenge to the federal stalking statute). However, as a whole, § 784.048 is not primarily a direct restriction on speech. Instead, it deals mostly with conduct, not speech.[5] See Staley v. Jones, 239 F.3d 769, 786 (6th Cir. 2001) (noting that Michigan's similar stalking statute dealt primarily with conduct). Thus, strict scrutiny does not apply to a facial challenge to the entire statute. Rather, the Court must look to the statute's potential applications, determine which are legitimate and which are potentially unconstitutional, and see if there are a substantial number of unconstitutional applications in relation to legitimate ones. See Dean, 635 F.3d at 1204-08.

### C. Interpreting the Stalking Statute

Florida courts have limited the statute's application by taking a narrow reading of substantial emotional distress and a broad reading of legitimate purpose. Substantial emotional distress is judged from the standard of a reasonable person. Bouters v. State, 659 So.2d 235, 238 (1995)[6]; Goudy v. Duquette, 112 So. 3d 716, 717 (Fla. Dist. Ct. App. 2013). Under Florida law, a reasonable person does not suffer substantial emotional distress easily. Thus, for example, idle threats were not sufficient to establish substantial emotional distress, even when added to statements to third parties suggesting violence. Jones v. Jackson, 67 So. 3d 1203, 1204 (Fla. Dist.

---

[5] For example, as Burroughs acknowledges, following someone involves no speech at all. (Doc. 21 at 21).

[6] This Court is bound by the Florida Supreme Court's construction of a Florida statute. See Johnson v. Fankell, 520 U.S. 911, 916 (1997).

Ct. App. 2011). Similarly, where a victim received two phone calls indicating that if he did not stay away from the alleged stalker's wife, the alleged stalker would make an "arrangement," there was not sufficient evidence that a reasonable person would suffer substantial emotional distress. Slack v. Kling, 959 So. 2d 425, 426 (Fla. Dist. Ct. App. 2007); but see T.B. v. State, 990 So. 2d 651, 655 (Fla. Dist. Ct. App. 2008) (finding that the usage of homophobic slurs on three separate occasions would likely cause substantial emotional distress).

In contrast to this narrow view of "substantial emotional distress," widely varied conduct can be deemed to have a "legitimate purpose." For example, a father calling to discuss his daughter's participation in a dance team competition had a legitimate purpose for his communications. Goudy, 112 So. 3d at 717. Communicating to seek repayment of a loan is likewise a legitimate purpose. Alter v. Paquette, 98 So. 3d 218, 220 (Fla. Dist. Ct. App. 2012).

Burroughs argues that the meaning of the savings clause, excluding from the statute's reach "constitutionally protected activity such as picketing or other organized protests," is unclear. (Doc. 7 at 17).[7] Burroughs asserts that this clause is both under-inclusive, in that it fails to exempt all constitutionally protected speech from coverage under the statute, and over-inclusive, in that it exempts even picketing and other organized protests that are not constitutionally protected. (Doc. 7 at 17). Burroughs' assertion that the savings clause is under-inclusive is only relevant insofar as she can

---

[7] Importantly, Burroughs did not bring a claim asserting that the statute is void for vagueness.

demonstrate that the under-inclusivity causes the statute to reach a substantial amount of protected speech relative to the plainly legitimate sweep.

As for Burroughs' assertion that the savings clause is over-inclusive, the statute is most easily read to exempt "constitutionally protected activity such as [constitutionally protected] picketing or other [constitutionally protected] organized protests." Even adopting Burroughs' strained reading of the savings clause as over-inclusive, the plainly legitimate sweep of the statute would only be limited from reaching rare scenarios where picketing or similar protesting activity is unprotected speech and causes substantial emotional distress.

### D. Other Courts' Holdings on Stalking Statutes

The Florida Supreme Court has already addressed the facial validity of § 784.048 in Bouters, 659 So.2d 235. There, the Supreme Court treated the statute as a whole in considering a challenge to § 784.048(4). Bouters, 659 So.2d at 238.[8] The court found that the conduct described in the statute is criminal and therefore unprotected by the First Amendment. Id. at 237. As such, the statute was not overbroad. Id. As Bouters dealt with the statute as a whole, rather than just § 784.048(4), the Florida Supreme Court merely cited to Bouters in upholding the constitutionality of § 784.048(2) in a companion case. Varney v. State, 659 So. 2d 234 (Fla. 1995).

The Sixth Circuit upheld Michigan's similar state stalking statute against a facial challenge. Staley v. Jones, 239 F.3d 769 (6th Cir. 2001). That statute prohibits

---

[8] Since that time, the statute has been amended to proscribe cyberstalking. Compare § 784.048 (1996) with § 784.048 (2010). This amendment, however, does not appear to broaden the statute's application. See supra n.5.

a willful course of conduct that involves repeated harassment of another individual that both actually caused the victim to feel intimidated, threatened, or harassed, and would cause a reasonable person to feel intimidated, threatened, or harassed. Id. at 771. Harassment is defined to exclude any constitutionally protected activity or conduct that serves a legitimate purpose. Id.[9] As the statute was primarily directed at conduct, the court applied the substantial overbreadth test. Id. at 786. Finding that the savings clause prevented the statute from being applied to entirely innocent conduct, the court upheld the statute, even though it recognized several examples of protected speech that could be restricted under the statute. Id.

Federal courts have similarly upheld the federal stalking statute against facial challenges. That statute prohibits, amongst other things, travel in interstate or foreign commerce with the intent to kill, injure, or harass another person where, in the course of that travel, the person places the other person in reasonable fear of death or serious bodily injury to themselves or an immediate family member, or causes substantial emotional distress to the other person or an immediate family member. 18 U.S.C. § 2261A (West 2012).[10] The statute also prohibits the use of any facility of interstate

---

[9] In interpreting the meaning of this exclusion, Michigan courts have looked to the Florida stalking statute's savings clause because of the statutes' similarities. See, e.g., People v. White, 212 Mich. App. 298, 310 (1995).

[10] The statute was amended, effective October 1, 2013. However, as all of the cases dealing with the constitutionality of the statute dealt with the statute as it existed before that amendment, the pre-amendment version is the relevant comparison here. In any event, the amendments to the statute do not appear to bear on the issues in this case.

9

commerce to engage in a course of conduct that causes substantial emotional distress. Id.

In addressing an overbreadth challenge to the federal statute, the Eighth Circuit held that the statute's prohibition was directed towards conduct, rather than speech, and was not even necessarily associated with speech. United States v. Petrovic, 701 F.3d 849, 856 (8th Cir. 2012). Moreover, because the statute required malicious intent and substantial harm, most, if not all, of the statute's potential applications were to conduct that is unprotected under the First Amendment. Id. As such, the statute survived a facial challenge. Id.[11]

The First Circuit similarly upheld the federal stalking statute, finding that it targeted "conduct performed with serious criminal intent, not just speech that happens to cause annoyance or insult." United States v. Sayer, 748 F.3d 425, 435 (1st Cir. 2014). One factual example of an unconstitutional application, even when added to some hypothetical unconstitutional applications, was not sufficient to render the statute overbroad. Id. (recognizing that the statute had been found unconstitutional as-applied in Cassidy, 814 F. Supp. 2d 574, but finding that most of the challenger's hypothetical unconstitutional applications were not violations of the statute).

In Cassidy, after A.Z., who was a lama in a Buddhist sect, rejected a marriage proposal, the jilted man posted thousands of tweets and two blog posts about her and the center where she taught. Cassidy, 814 F. Supp. 2d at 579. As the speech was

---

[11] Finding Petrovic persuasive, the Ninth Circuit likewise upheld the validity of the federal stalking statute. United States v. Osinger, 753 F.3d 939, 944 (9th Cir. 2014).

related to A.Z.'s fitness as a leader of the sect, it was exactly the kind of speech the First Amendment protects most. Id. at 586. Finding that the statute as-applied was therefore a content-based restriction on protected speech, the court applied strict scrutiny and found no compelling government interest in the restriction, especially since A.Z. could have merely stopped looking at the defendant's tweets and blog posts. Id. at 584-85. Plaintiff makes no similar as-applied challenge here.

While the Eleventh Circuit has never addressed the constitutionality of the federal stalking statute, it has previously rejected claims of unconstitutionality in the context of harassment. See United States v. Eckhardt, 466 F.3d 938, 943-44 (11th Cir. 2006). In Eckhardt, the defendant argued that the federal statute prohibiting anonymous phone calls that were annoying, abusive, harassing, or threatening was unconstitutional. Id. at 943. Finding that the statute was aimed at prohibiting communications intended to instill fear in the victim, the Eleventh Circuit found that the statute was not overbroad, as sexually-charged phone calls used to harass and frighten someone are not protected speech. Id. at 943-44.

### E. Whether the Florida Stalking Statute is Overbroad

If a state supreme court has decided that all components of a statute stand or fall together, federal courts are bound by that holding. Virginia v. Hicks, 539 U.S. 113, 121-22 (2003). Therefore, since the Florida Supreme Court in Bouters treated the stalking statute as a whole, the question in this case is whether the entirety of § 784.048, not just § 784.048(2), is overbroad.

In considering the plainly legitimate scope of the statute, it is important to remember that different conduct merits different levels of scrutiny. Where the statute regulates speech based on its content, this Court must apply "exacting" scrutiny in determining whether the regulation of that speech is constitutional. See United States v. Alvarez, 132 S. Ct. 2537, 2543 (2012) ("When content-based speech regulation is in question . . . exacting scrutiny is required.").[12] Where instead the statute prohibits unprotected conduct, such exacting scrutiny is not required. Id. at 2544. Unprotected conduct includes advocacy intended and likely to incite imminent lawless action, obscenity, defamation, speech integral to criminal conduct, fighting words, child pornography, fraud, true threats, and speech presenting a grave and imminent threat that the government has the power to prevent. Id. The restriction of these kinds of speech has never been thought to present a First Amendment problem. United States v. Stevens, 559 U.S. 460, 468-69 (2010).

Burroughs admits that § 784.048(3) does not restrict constitutionally protected speech because it only applies to credible threats. (Doc. 21 at 6).[13] Burroughs also concedes that the "follow" prong of § 784.048(2) regulates almost exclusively conduct, not speech. (Doc. 21 at 7). Burroughs argues, however, that the "harass" prong of § 784.048(2) regulates a substantial amount of protected speech, and the "cyberstalking"

---

[12] The Supreme Court used the term "exacting scrutiny" rather than "strict scrutiny", but the phrases appear to mean the same thing. See Alvarez, 132 S. Ct. at 2549 (requiring the government show its restriction on speech is actually necessary to achieving a compelling interest to pass exacting scrutiny).

[13] Burroughs mistakenly refers to this section as § 784.048(4). (Doc. 21 at 6).

provision almost exclusively regulates protected speech. (Doc. 21 at 7-8). Both harassment and cyberstalking require the defendant to engage in a "course of conduct", which expressly excludes "constitutionally protected activity such as picketing or other organized protests." § 784.048(1)(b). While Burroughs states that the statute nevertheless prohibits protected speech, the only support given is a generalized statement that the speech at issue in § 784.048(2) is not unprotected. (Doc. 21 at 9).

As Burroughs provides no specific examples of constitutionally protected speech that would also violate § 784.048, this Court is left to imagine such hypotheticals. The conduct at issue in Burroughs' state prosecution does not appear, from the meager allegations before the Court, to qualify as such an example.[14] Burroughs' flyer posting was either not a violation of the statute or was not constitutionally protected speech. If the information on the flyers was true, posting the flyers on the vehicles would arguably not violate the statute because she had the legitimate purpose of getting her money back. See Alter, 98 So. 3d at 220 (holding that communication to seek repayment of a loan was a legitimate purpose).[15] If, on the other hand, the information on the flyers was false, her statements likely constitute defamation, thus rendering them unprotected under the First Amendment. If, as the counsel for the State

---

[14] Because Burroughs has not brought an as-applied challenge to § 784.048, the Court need not decide whether her alleged conduct violated the statute or whether the statute would be unconstitutional as applied to that scenario.

[15] The Court does not decide whether placing flyers on other people's vehicles could violate some other law.

Attorney suggested at oral argument, Burroughs also waved a gun outside her vehicle and made threats, these activities are also unprotected under the First Amendment.

Indeed, without help from Burroughs, it is difficult to imagine a course of conduct that would demonstrate protected speech (rather than true threats of violence, fighting words, obscenity, speech integral to criminal conduct[16] or defamation) which causes substantial emotional distress and is not also either conducted for a legitimate purpose or constitutionally protected activity under the savings clause.

While there may well be a rare scenario where a defendant is prosecuted under the statute for protected conduct,[17] Burroughs has not shown that § 784.048 has a substantial number of unconstitutional applications, especially when compared to the statute's plainly legitimate coverage. As such, the statute is not facially unconstitutional.

Accordingly, it is hereby

**ORDERED:**

1. Defendants' motions to dismiss (Doc. 18, 19) are **GRANTED**. Burroughs' First Amended Complaint (Doc. 15) is **DISMISSED with prejudice**.[18]

---

[16] Burroughs asserts that an argument for the "speech integral to criminal conduct" exception is circular with respect to this statute because the speech is only integral to criminal conduct because this statute criminalizes the conduct. Burroughs is right that speech cannot be unprotected only because it is criminal in the challenged statute. However, speech is unprotected where it is integral to criminal conduct forbidden under another statute, such as where the speech constitutes the crime of extortion. See, e.g., Petrovic, 701 F.3d at 855.

[17] Of course, that defendant could raise an as-applied challenge to the statute.

[18] Prompted by the Court's questioning at the hearing, Plaintiff's counsel suggested that Burroughs might want to amend her complaint to assert a vagueness

2.	Plaintiffs' Motion for Preliminary Injunction (Doc. 7) is **MOOT**.

3.	The Clerk should close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 18th day of February, 2015.

_____
TIMOTHY J. CORRIGAN
United States District Judge

w.
Copies to:

Counsel of record

---

challenge. However, she has proceeded here only on a facial overbreadth claim. Of course, nothing prevents Plaintiff from filing a new suit on vagueness grounds if she so chooses. The Court intimates no view on the likely success of such a claim.